2026 IL App (2d) 240675-U
No. 2-24-0675
Order filed July 7, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

ERNESTO VALLE, Defendant-Appellant

Appeal from the Circuit Court of Kane County.
Honorable Robert K. Villa, Judge, Presiding.
No. 06-CF-2062

JUSTICE McLAREN delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's second-stage dismissal of defendant's successive postconviction petition is affirmed where 1) defendant failed to establish cause for not raising his youth-based proportionate penalties claim to his mandatory de facto life sentence in an earlier proceeding, and 2) defendant did not establish cause for his failure to raise the claim of a coerced confession in his initial postconviction petition. Trial court is affirmed.

¶ 2   A jury found defendant Ernesto Valle guilty of first degree murder of Jessie Lozano. At the time of the offense, defendant was nearly 19 years old. The trial court sentenced defendant to a minimum mandatory life sentence of 45 years in prison. This sentence comprised of 20 years for first degree murder (the minimum) and 25 years for personally discharging a firearm to cause Lozano's death (the minimum). We affirmed defendant's conviction and sentence of imprisonment,

but vacated a fee imposed by the trial court. *People v. Valle*, 405 Ill. App. 3d 46, 61 (2010) (*Valle I*).

¶ 3     In 2011 defendant filed a post-conviction petition that the trial court summarily dismissed and which we affirmed on appeal. *People v. Valle*, 2013 IL App (2d) 110756-U (*Valle II*). On April 11, 2019, defendant filed a motion for leave to file a successive petition for postconviction relief on the grounds that (1) defendant's sentence violated the proportionate penalties clause of the Illinois Constitution as applied to defendant, and (2) the trial court erred in admitting his coerced confession at trial. The court granted leave, advanced the petition to the second stage and appointed counsel. Defendant waived his right to counsel and proceeded *pro se*. On October 9, 2024, the trial court granted the State's motion to dismiss. Defendant appeals here from that dismissal and contends that his cause should be remanded for an evidentiary hearing because his pleadings made a substantial showing that his *de facto* life sentence, as applied to him, violated the proportionate penalties clause of the Illinois Constitution. Defendant also argues that the trial court erred when it dismissed his successive petition because he established cause and prejudice for failing to raise his claim of a coerced confession in his initial postconviction petition. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5     The pertinent facts from the trial are set forth in *Valle I*. We summarize briefly.

¶ 6     Defendant was arrested as a suspect on August 12, 2006, for the shooting death of Jessie Lozano. The police interrogated defendant at length over the course of the night and day following his arrest. The police used tactics that included several instances of deception and occasional use of a highly aggressive tone. Ultimately, defendant made inculpatory statements that were recorded. He admitted ties to the Latin Kings gang. Defendant described being in a car with two other people with Kings affiliations, Hector and Chris. Defendant told the police that he got out of the car with

a gun and shot at a moving car. Defendant made contradictory statements about whether he shot the moving car before or after he was at a party. He expressed uncertainty about where the shooting occurred and the kind of gun he used.

¶ 7    Before trial, defendant moved to exclude his recorded inculpatory statements, alleging that the statements were coerced. After a hearing, the trial court denied defendant's motion.

¶ 8    At trial, the State primarily presented defendant's recorded statements and the testimony of Chris (whom the State did not charge) and Hector (who had pleaded guilty to conspiracy to murder, under an agreement to testify against defendant). According to Chris and Hector, on the night of the shooting the three were at a party together. Defendant talked to "Ric Dog" and someone passed defendant a gun. Defendant said that he wanted to get his "crown." The three left the party and drove off, with defendant giving directions as Hector drove. Chris fell asleep in the car.

¶ 9    Hector drove to a place where he thought a party was going on because he saw cars going in and out of the driveway. Defendant asked if Hector had seen "that truck" or "that SUV." Hector saw a big pickup truck. He started looking for a place to park. Defendant said, "pull over." The same truck drove head-on toward them. Defendant got out of the car, with his gun out, and ran toward the truck. When defendant reached the intersection, he shot at the truck three to five times. Defendant got back in the car and said that "he got him." Hector drove away fast and returned them to the party. On the way, defendant told Hector that the person had been "snitching." When they got back to the party, defendant told Ric Dog that he got him. Ric Dog told them they were "shorties" (associate members) and had "come home." Hector said that defendant would have earned his crown based on the shooting. Defendant gave the gun back to the person who had it originally. After about half an hour, defendant left the party with Hector and went to defendant's house.

¶ 10    The jury found defendant guilty of the murder and of having discharged the firearm. Defendant filed a posttrial motion, challenging, among other things, the admission of the inculpatory statements. The court denied the motion.

¶ 11    A presentence investigation report (PSI) indicated that defendant committed the offense when he was two weeks from his 19th birthday. Defendant had no health or psychological issues and denied any family history of substance abuse, or physical, mental, or sexual abuse. The PSI included a statement by defendant. He asserted his innocence, claimed he was depressed and felt helpless but had a supportive family. Regarding the inculpatory statements he made while in custody, defendant stated that he felt helpless, he was confused, threatened, pressured, and was tricked by the police. He claimed that he told them what they wanted to hear so that he could get released. The PSI indicated that defendant had two pending class 4 felonies charges for mob action and a class A misdemeanor charge for battery that occurred in jail pending sentencing. The court also received two victim impact statements from the victim's mother.

¶ 12    A sentencing hearing followed. The court reviewed the PSI. The State argued that the trial court should sentence defendant to 49 or 50 years' imprisonment. Defense counsel argued that defendant should be sentenced to the minimum of 45 years' imprisonment because due to his young age, he is not likely to reoffend, and any sentence would deter others. Lastly, defense counsel stated, "At his young age he has a chance to get back into society and be a benefit to society."

¶ 13    Before imposing the sentence, the court stated that he considered the evidence presented at trial, the PSI, and the financial impact of incarceration. In aggravation, the court stated that the sentence was necessary to deter others from committing the same crime and that defendant committed an offense related to the activities of an organized gang. The court stated there were no

factors in mitigation. The court then sentenced defendant to the minimum allowed by law, 45 years' imprisonment; 20 years for first degree murder (730 ILCS 5/5-8-1(a)(1)(a) (West 2006) (providing a range of 20 to 60 years)); and a consecutive term of 25 years for personally discharging the firearm that caused the victim's death (see *id.* § 5-8-1(a)(1)(d)(iii) (providing a range of 25 years to natural life)).

¶ 14    Defendant appealed, challenging only the propriety of the admission of his videotaped inculpatory statements on the basis that they were involuntary, and a $100 fine imposed at sentencing. We upheld the admissibility of the videotaped statements. *Valle I*, 405 Ill. App. 3d at 59-61.

¶ 15    In April 2011 defendant filed a postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). The trial court summarily dismissed defendant's petition and we affirmed. *Valle II*, 2013 IL App (2d) 110756-U, ¶¶ 8-12, 18.

¶ 16    In April 2019 defendant sought leave to file a successive postconviction petition. The trial court appointed counsel and advanced the petition to the second stage. Counsel filed an amended successive postconviction petition, but defendant terminated counsel.

¶ 17    In December 2022 defendant, *pro se*, filed a supplemental successive postconviction petition (successive petition). Defendant challenged his 45-year sentence under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and claimed that the trial court erred when it admitted his videotaped inculpatory statements. Defendant asserted that *Miller v. Alabama*, 567 U.S. 460 (2012), and its Illinois progeny provided a new substantive rule regarding considerations of defendant's youth when sentenced. He acknowledged that he was not

a juvenile offender at the time of the offense but argued that his youth should have been considered at sentencing.

¶ 18    Defendant supplemented his successive petition with a report prepared by Dr. James Garbarino. Garbarino opined that "as an 18 year old who experienced significant adversity, [defendant] exhibits a kind of 'adolescence squared.' *** [But defendant] was not one of the rarest cases of 'irreparable corruption' where rehabilitation and positive transformation are impossible." Garbarino stated that the "*Miller* issues" applied to defendant and that defendant's dysfunctional family, witnessing of community violence and substance-abusing of his peers, had a negative influence on him that exacerbated his problems with making good decisions and managing his emotions. Garbarino opined that defendant had a strong support system and rehabilitative potential, and recommended resentencing with the court to reconsider defendant's youth at the time of the offense.

¶ 19    Garbarino also stated:

> "[Defendant] claims that his confession to the fatal shooting of Jesse Lozano was false and was coerced by members of the Aurora Police Department. While I am not in a position professionally to verify this claim, I can assert with confidence that this claim is psychologically and socially *plausible*." (Emphasis in original.)

Garbarino then summarized research and cases that indicate police tactics may lead to coerced false confessions from young adults. Garbarino opined: "[Defendant's] account of his confession to the crime in 2006, contains all the elements identified in research as the conditions in which coerced false confessions by young males occur."

¶ 20    The trial court granted the State's motion to dismiss. Defendant now appeals from the trial court's dismissal and urges us to reverse the trial court and remand the case for a third-stage

evidentiary hearing. For the reasons that follow, we affirm the dismissal of defendant's successive petition.

¶ 21                                    II. ANALYSIS

¶ 22    Defendant argues that the trial court erred when it dismissed his successive petition at the second-stage of postconviction proceedings because he satisfied the cause and prejudice test and made a substantial showing that 1) his mandatory natural life sentence was unconstitutional, as applied to him under the Illinois proportionate penalties clause, and 2) his confession was not voluntary and he did not knowingly waive his *Miranda* rights.

¶ 23    The Act (725 ILCS 5/122-1 *et seq*. (West 2022)) allows a defendant to raise a claim that his sentence violates his constitutional rights. *People v. Clark*, 2023 IL 127273, ¶ 38. Because the Act is not a substitute for an appeal, but rather, a collateral attack on a final judgment, issues that were not presented in an original postconviction petition are forfeited and issues that were previously raised and addressed on direct appeal are barred by the doctrine of *res judicata. Clark*, 2023 IL 127273, ¶ 38 (citing 725 ILCS 5/122-3 (West 2022)).

¶ 24    Consistent with these principles, the Act contemplates the filing of only one petition without leave of court and codifies the cause-and-prejudice test as the prerequisite to obtaining such relief. 725 ILCS 5/122-1(f) (West 2022). To obtain leave, the defendant must establish cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings and prejudice by demonstrating that the claim not raised earlier so infected the trial that the resulting conviction or sentence violated due process. *Id.*

¶ 25    If, as here, the trial court grants leave to file a successive petition, the petition is docketed for second-stage proceedings, where the defendant must make a substantial showing of a constitutional violation. *People v. Cotto*, 2016 IL 119006, ¶ 27. At the second stage, the State may

file responsive pleadings and seek dismissal of the petition on any ground, including procedural default. *People v. Bailey*, 2017 IL 121450, ¶ 26. This permits the State to, once again, argue that dismissal is proper because the petitioner failed "to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *Id*. Our review of the trial court's second-stage dismissal of a petition is *de novo*. *People v. Johnson*, 2024 IL App (1st) 220419, ¶ 65.

¶ 26    Successive postconviction petitions are highly disfavored because they impede the finality of criminal convictions that undermines "the deterrent effect of our criminal laws." *People v. Montanez*, 2023 IL 128740, ¶ 73. The legislature designed the Act to allow defendants to file only one petition under the statute. 725 ILCS 5/122-1(f) (West 2022); *Clark*, 2023 IL 127273, ¶ 39 ("the legislature generally intended to limit a petitioner to the filing of only one petition under the Postconviction Act."). Therefore, a defendant filing a successive postconviction petition must first obtain leave of court. 725 ILCS 5/122-1(f) (West 2022).

¶ 27    To obtain leave to file a successive postconviction petition, a defendant must show "cause" and "prejudice." *Id.* A failure to establish either prong is fatal to the claim. *People v. Montanez*, 2023 IL 128740, ¶ 77. "[C]ause" is "an objective factor that impeded [the defendant's] ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f)(1) (West 2022). "[P]rejudice" requires a showing that "the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* § 122-1(f)(2).

¶ 28    When, as here, the trial court granted defendant leave to file a successive petition, it effectively advanced the successive petition to the second stage of postconviction proceedings. *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 32. The State moved to dismiss defendant's successive petition pursuant to section 122-5 of the Act. 725 ILCS 5/122-5 (West 2022). The State

sought dismissal of defendant's successive petition based on defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition. We review a trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Addison*, 2023 IL 127118, ¶ 17. We may affirm a trial court's judgment on any basis supported by the record. *People v. Howard*, 2021 IL App (2d) 190695, ¶ 21.

¶ 29                           A. Defendant's Proportionate Pentalties Claim

¶ 30     Defendant contends that he satisfied the cause and prejudice test for his claim that his mandatory *de facto* life sentence violates the proportionate penalties clause 1) because the legal basis for his claim was not previously available until the United States Supreme Court decided *Miller v. Alabama,* 567 U.S. 460, 479 (2012) (holding "life in prison without possibility of parole for juvenile offenders" violates the eighth amendment of the United States Constitution) and related Illinois cases, and 2) because he presented previously unavailable evidence that his brain was more like that of a juvenile than an adult.

¶ 31     The eighth amendment and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) are generally read coextensively. See, *e.g.*, *People v. Patterson*, 2014 IL 115102, ¶ 101; *People v. Nichols*, 2018 IL App (2d) 150779, ¶ 20. Under the proportionate penalties clause all penalties must "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Spencer*, 2025 IL 130015, ¶ 42. A sentence violates the proportionate penalties clause when, *inter alia*, the penalty imposed is "'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of our community.'" *People v. Clark*, 2023 IL 127273, ¶ 51 (quoting *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002)).

¶ 32    The mandate set forth in the proportionate penalties clause provides a check on both 1) the judiciary, which imposes sentences on defendants within the limits prescribed by the legislature, and 2) the legislature, which sets statutory penalties. *People v. Spencer*, 2025 IL 130015, ¶ 42. The legislative power to prescribe necessarily includes the authority to prescribe mandatory sentences, even if those sentences restrict the judiciary's discretion. *People v. Hilliard*, 2023 IL 128186, ¶ 21. To be clear, defendant does not argue that his sentence fails to comport with the sentencing statutes at issue. Rather, defendant argues that he established cause because he lacked legal support for his proportionate penalties claim until 2012 when the United States Supreme Court decided *Miller*. Defendant also maintains that he lacked new evidence to support his claim.

¶ 33    To establish cause, a defendant must identify an objective factor that prevented him from raising his constitutional claim in his initial postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 48; 725 ILCS 5/122-1(f) (West 2022). That is, the defendant must articulate why he could not have discovered the claim earlier by exercising due diligence. *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 73.

¶ 34    We hold that defendant cannot make such a showing. Pursuant to our supreme court's decisions in *Clark*, 2023 IL 127273, and *People v. Moore*, 2023 IL 126461, we conclude that the trial court properly dismissed defendant's successive petition because he failed to show cause for not raising his as-applied proportionate penalties sentencing challenge on direct appeal or in his initial postconviction petition. "Illinois cases have long held the proportionate penalties clause require[s] the circuit court to take into account the defendant's youth and mentality in fashioning an appropriate sentence." (Internal quotation marks omitted.) *Clark*, 2023 IL 127273, ¶ 92 (collecting cases dating to 1972).

¶ 35   Further, *Miller* did not change the law applicable to sentences imposed on young adult offenders, *i.e.*, 18- to 20-year-olds. *Spencer*, 2025 IL 130015, *People v. Moore*, 2023 IL 126461, ¶ 44; *People v. Harris*, 2018 IL 121932, ¶ 58 ("[T]he Supreme Court has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18."). In *Moore*, our supreme court held that *Miller* directly applies only to juveniles and does not apply to young adults. *Moore*, 2023 IL 126461, ¶ 38. As such, *Miller* does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause in a successive postconviction petition. *Id.* ¶ 42.

¶ 36   Defendant asserts that *Moore* does not apply to him because *Moore* held that *Miller* only applied to discretionary sentences; whereas defendant's sentence was mandatory. We disagree with defendant's argument.

¶ 37   In *People v. Horshaw*, 2024 IL App (1st) 182047-B, the appellate court concluded that supreme court precedent did not allow for a distinction between mandatory and discretionary sentences for proportionate penalties claims brought by young-adult offenders. Rather, that precedent indicated that such a claim "should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along and that defendant did not need *Miller* or *Miller*-related proportionate penalties precedent to raise the claim now at issue." *Id.* ¶ 62.

¶ 38   Additionally, in *People v. Leach*, 2024 IL App (4th) 230298, the appellate court noted that "nothing in *Moore* suggested a distinction between discretionary and mandatory sentences," and it recognized *Moore*'s statement that "'*Miller* did not change the law applicable to *young adults.*" (Emphasis in original.) *Id.* ¶¶ 86-87 (quoting *Moore*, 2023 IL 126461, ¶ 42). Instead, the appellate court in *Leach* concluded that the defendant's argument that a distinction existed between

- 11 -

discretionary and mandatory sentences for young adults relied on "selective reading" of the caselaw. *Id.* ¶ 87.

¶ 39 Further, *People v. Merriweather*, 2023 IL App (1st) 220440-U, is persuasive. *Merriweather* held that the distinction between discretionary and mandatory life sentences was "irrelevant" and that Illinois cases such as *Moore* holding that *Miller* and its progeny do not provide cause for a young-adult offender to raise a proportionate penalties claim in a successive petition "apply to both claims involving discretionary life sentences and those involving a mandatory life sentence." *Id.* ¶ 21.

¶ 40 We agree with the decisions in *Horshaw*, *Leach*, and *Merriweather* that it is clear from the supreme court's decisions in *Dorsey* and *Moore* that *Miller* does not provide cause for a young-adult offender who received a *de facto* life sentence to raise a proportionate penalties claim in a successive postconviction petition, regardless of whether the sentence was mandatory or discretionary. As plainly stated in *Moore*, "*Miller* did not change the law applicable to young adults" (2023 IL 126461, ¶ 42) and "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause" because it "does not apply directly to young adults" (*id.* ¶ 40). Accordingly, the trial court did not err in finding that the defendant did not demonstrate cause as to his proportional penalties claim. Because the defendant failed to establish cause, we need not address prejudice (see *id.*).

¶ 41 In support of his contention that he established cause, defendant cites, *People v. Green-Hosey*, 2025 IL App (2d) 240284, *pet. for leave to appeal granted*, No. 131560 (filed Sept. 24, 2025), which is distinguishable. First, in *Green-Hosey* we reviewed an initial postconviction petition that advanced to a third-stage hearing. *Id.* ¶¶ 16-21. There is an important distinction between a proportionate penalties claim raised in an initial postconviction petition and one asserted

for the first time in a successive petition. *Moore*, 2023 IL 126461, ¶ 42 (the "defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions." (Internal quotation marks omitted.) (citation omitted). Because *Miller* did not change the law applicable to young adults, it did not provide cause for the proportionate penalty challenges advanced in *Moore*'s and *Williams*'s proposed successive postconviction petitions.

¶ 42    Defendant cites *People v. Harris*, 2018 IL 121932, to support his contention that "emerging adults' proportionate penalties claims that challenge *de facto* life sentences are legally cognizable." However, in *Harris*, our supreme court stated, "defendant in this case was 18 years old at the time of his offenses. In addition, our supreme court clearly reiterated its conclusion that "*Miller* only applies to juveniles and does not apply to emerging adults." *People v. Spencer*, 2025 IL 130015, ¶ 32. Here, defendant was nearly 19 years old – not a juvenile – and, therefore, *Miller* does not apply to his circumstances.

¶ 43    Defendant relies on *People v. Thompson*, 2015 IL 118151, and *People v. House*, 2018 IL 121932, to support his argument that *Miller*'s holding is extended to young adults. However, these cases are wholly irrelevant to defendant's situation. In 2023 in *Clark*, our supreme court explained: "this court has not foreclosed 'emerging adult' defendants *** from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development. *** [However, *Thompson* and *Harris*] addressed the possibility of a defendant raising a *Miller*-based challenge with respect to mandatory life sentences in *initial* postconviction petitions" (emphasis in original)) *Clark*, 2023 IL 127273, ¶ 88. See also *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62; see also *e.g. People v. Brewer*, 2025 IL App (1st) 240088, ¶¶ 29-30, *People v. Minniefield*, 2025 IL App (1st) 240463-U, ¶ 54; *People v. Handy*,

2025 IL App (1st) 231568-U, ¶ 58; *People v. Davis*, 2025 IL App (1st) 231499-U, ¶¶ 19, 24. Here, defendant raised as-applied proportionate penalties challenge for the first time in a successive postconviction petition. Therefore, *Thompson* and *House*, are not dispositive, here.

¶ 44 In addition, we reject defendant's argument that he established cause because he presented new, previously unavailable factual evidence that shows his brain was immature and more similar to that of a juvenile's than an adult's. Defendant cannot establish the necessary cause because our courts have long recognized the differences between juvenile and young adult offenders. See *People v. Dorsey*, 2021 IL 123016, ¶ 74; *Clark*, 2023 IL 127273, ¶¶ 92-94; *People v. Moore*, 2023 IL 126461, ¶ 42; *Hilliard*, 2023 IL 128186, ¶ 28.

¶ 45 In *Dorsey*, a juvenile offender sought leave to file a successive postconviction petition, challenging his 76-year aggregate prison sentence based on *Miller*. The *Dorsey* court held "that *Miller*'s announcement of a new substantive rule under the eighth amendment [did] not provide cause for [the] defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123016, ¶ 74. "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.*

¶ 46 Following *Dorsey*, Illinois courts have continued to hold that sentencing claims based on youth are not novel and do not support a finding of cause. In *Clark*, the supreme court considered the proportionate penalties claim of a 24-year-old defendant suffering from mental health issues. *Clark*, 2023 IL 127273, ¶ 1. Applying the cause-and-prejudice test, the supreme court found that the defendant could not establish cause because case law was clear that the new rule set forth in *Miller* "'does not provide cause for a defendant to raise a claim under the proportionate penalties

clause' in a successive postconviction petition." *Id.* ¶ 92 (quoting *Dorsey*, 2021 IL 123010, ¶ 74). In applying *Dorsey* to young adult offenders, the *Clark* court observed that "Illinois courts were also aware that 'less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development.'" *Id.* ¶ 93 (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 47). The court found that the defendant "'had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause' when he filed his previous postconviction petitions." *Id.* (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 49). The supreme court concluded that, "citing the *Miller* line of cases does not satisfy the 'cause' prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition, as *Miller*'s unavailability does nothing to explain why defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings." *Id.* ¶ 94; see *Moore*, 2023 IL 126461, ¶ 42 ("As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in [the defendants'] proposed successive postconviction petitions."); *People v. Hilliard*, 2023 IL 128186, ¶ 28 (recognizing its holding in *Moore* that *Miller* protections do not apply to discretionary sentences or adults).

¶ 47    Here, defendant had "the essential legal tools" to raise his present claim under the proportionate penalties clause when he filed his previous postconviction petition. *Clark*, 2023 IL 127273, ¶ 93. in *Clark*, our supreme court clarified that "Illinois cases have long held that the proportionate penalties clause required the circuit court to take into account the defendant's 'youth' and 'mentality' in fashioning an appropriate sentence" and that "[a]s far back as 1894, this court recognized that '[t]here is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors' " and " '[t]he habits and

characters of the latter are, presumably, to a large extent as yet unformed and unsettled.' " *Id.* ¶ 92 (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)). In addition *Miller* did not establish cause for offenders with intellectual disabilities to raise new challenges to their sentences under the proportionate penalties clause, because "[l]ong before *Miller*, Illinois law recognized the reduced culpability of defendants with intellectual disabilities." *Id.* ¶ 62.

¶ 48      We hold that defendant has failed to show cause to prevail on his successive postconviction claim. As *Miller* did not change the law applicable to sentences imposed on young adult offenders, it does not provide cause for defendant to prevail on his claim raised here. *Moore*, 2023 IL 126461, ¶ 44; see also *Clark*, 2023 IL 127273, ¶ 72. Based on the foregoing, we affirm the trial court's dismissal of defendant's successive postconviction petition. As our ruling on cause disposes of this claim, we need not address whether defendant adequately established prejudice. See *id.* ¶ 94.

¶ 49                    B. Defendant's Inculpatory Statements Claim

¶ 50      Presently, defendant raises the same issue regarding his inculpatory statements that were previously raised and definitively settled by judicial decisions. On direct appeal, defendant argued that the trial court erred when it admitted his videotaped inculpatory statements. He contended his statements were involuntary due to his age, lack of experience with the criminal justice system, his intellect, intoxication, and fatigue, and the subterfuge, trickery, and coercion of the police. *Valle I*, 405 Ill. App. 3d at 58, 55. We held the trial court's "finding that defendant lacked any special susceptibility to the police tactics [was not] against the manifest weight of the evidence." *Id.* at 58. Defendant renewed his claim in his writ of *habeas corpus* in federal court where it was rejected again. *Valle v. Butler*, 707 Fed. Appx. 391, 392, 397 (7th Cir. 2017). Accordingly, further litigation on the claim that his inculpatory statements were inadmissible because they were involuntary is barred by the *res judicata* doctrine. *People v. Montanez*, 2023 IL 128740, ¶ 104.

¶ 51    The effect of the *res judicata* doctrine may be relaxed only if defendant satisfies the cause prong of the cause and prejudice test, *i.e.*, establish the existence of an objective factor, "external to the defense," that "*impeded the defendant's ability to raise a specific claim at the initial postconviction proceeding.*" (Emphasis added.) *Clark*, 2023 IL 127273, ¶ 60.

¶ 52    Based on our review of defendant's successive petition and the record before us, we conclude that defendant cannot establish cause. Defendant failed to demonstrate any objective factor that impeded his ability to raise the claim in his original initial postconviction petition.

¶ 53    Defendant maintains that he established cause by presenting a 2018 article that discusses the increasing skepticism of the "Reid Method," as an effective police interrogation tactic. Contrary to defendant's assertion, the information contained in the article is not new. More than 50 years ago the United State Supreme Court was openly critical of the "Reid Method." *Miranda v. Arizona*, 384 U.S. 436, 449-455 (1966).

¶ 54    Defendant also asserts that Garbarino's report establishes cause. However, Garbarino's report does not support defendant's claim that his inculpatory statements were involuntary. In his report, Garbarino stated that he reviewed defendant's claim that his videotaped statement was false and coerced due to his age and life experiences. Garbarino then stated that he was "not in a position to professionally verify" defendant's claim that his inculpatory statement was coerced and false. Garbarino stated only that defendant's claim was "psychologically and socially plausible."

¶ 55    At the time defendant filed his initial postconviction petition, he had the essential legal tools required to raise his claim. See *Clark*, 2023 IL 127273, ¶ 93. Even if the report and article could have provided "some helpful support" for defendant's claim, he was not precluded from raising his claim in his initial postconviction petition and therefore defendant is unable to establish cause. *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 56 Because defendant cannot satisfy the cause prong of the cause-and-prejudice test, the trial court properly granted the State's motion to dismiss defendant's successive postconviction petition.

¶ 57                                    III. CONCLUSION

¶ 58 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 59 Affirmed.